**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NAMITA GOSWAMI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 12 C 7167** |
| | ) | |
| **v.** | ) | **Magistrate Judge Cole** |
| | ) | |
| **DEPAUL UNIVERSITY,** | ) | |
| **PEG BIRMINGHAM, and** | ) | |
| **ELIZABETH ROTTENBERG,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Namita Goswami, was a professor at DePaul University for eight years until the University denied her application for tenure and terminated her employment based on her gender, race, color, and national origin. (*Amended Complaint*, ¶ 1). But the claims at issue here are her charges against two of her former colleagues, Peg Birmingham and Elizabeth Rottenberg, for tortious interference with prospective economic advantage. The defendants have moved to dismiss those counts for failure to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure.

**I.**

**A.**
**Standards Applicable to Motions to Dismiss**

Ms. Goswami argues that her complaint cannot be dismissed unless "there is no set of facts [she] could prove that would entitle her to relief." (*Plaintiff's Memorandum in Opposition*, at 5). But this is no longer the standard. The Supreme Court specifically disavowed it six years ago in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 (2007)("The phrase is best forgotten . . . ."). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is

plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* The plausibility standard requires more than a mere possibility that the claim is valid; something akin to a non-eligible probability is required, although plausibility does not equate to the preponderance standard that applies at trial. *Brooks v. Pactiv Corp.,* 729 F.3d 758, 763 (7th Cir. 2013). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* at 679; Fed. R. Civ. P. 8(a)(2).

## B.

### The Complaint's Allegations

As is always the case when considering a motion to dismiss a complaint, the plaintiff's allegations must be accepted as true and all reasonable inferences must be drawn in her favor. *Brooks*, 279 F.3d at 763; *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir. 2009).

In 2003, DePaul hired Ms. Goswami as an assistant professor on the tenure track in its Department of Philosophy. (*Amended Complaint*, ¶ 15). The terms of the contract between DePaul and Ms. Goswami were set out in the DePaul Faculty Handbook, which governed faculty appointment, as well as the tenure and review process. (*Amended Complaint*, ¶¶ 30, 157). Under those terms, Ms. Goswami had to complete a six-year probationary period before she was eligible to apply for tenure. (*Amended Complaint*, ¶¶ 15, 30, 62). She also had to undergo annual reviews during the probationary period "[t]o assess progress toward promotion and tenure," and "to

determine whether reappointment for the next academic year is appropriate and desired." (Defendants' Ex. A § 3.2.2). If tenure-track faculty members are "not granted tenure . . . [they] will not be offered a contract renewal at DePaul." (*Amended Complaint*, ¶157; Defendants' Ex. A § 3.5.4). Their appointment would simply "terminate at the conclusion of the contract for the following academic year that was previously issued." (*Amended Complaint*, ¶ 157; Defendants' Ex. A § 3.6.1).

Tenure, of course, is not automatic; it is not an entitlement. (Exhibit A §§ 3.5-3.6). As detailed in the handbook, DePaul's tenure process involves multiple levels of review by faculty, with the final decision resting with the University's president. (*Amended Complaint*, ¶¶ 30-43). Following that multi-level review process, the University may confer tenure only if it has "no reasonable doubt about the faculty member's demonstrated qualifications" in the areas of teaching, scholarship, and service. (*Amended Compliant*, ¶¶ 30, 157; Defendants' Ex. A § 3.5.2.1). Ms. Goswami claims, however, that it was DePaul's practice to grant tenure to candidates "who met at least two out of the three tenure criteria." (*Amended Complaint*, ¶ 33). She further claims that DePaul's associate vice president of academic affairs said that a candidate had to be excellent in two of the categories and adequate in a third. (*Amended Complaint*, ¶ 34). In the College of Liberal Arts, where Ms. Goswami taught, teaching was considered in the tenure calculus. (*Amended Complaint*, ¶ 36).

Ms. Goswami's six-year probationary review period began in 2003, and, during that time, the University gave her no indication that she was lacking in teaching, scholarship, or service. (*Amended Complaint*, ¶ 63). There were merit reviews, biennial informal reviews, and biennial formal reviews; the formal reviews were used to assess progress toward tenure. (*Amended*

*Complaint*, ¶ 64).  Her first merit review five months in was "very good."  (*Amended Complaint*, ¶ 65).  Her first formal review was as well.  She was said to have a "strong beginning in the areas of teaching research, and service . . . ."  The committee was "pleased" with her as a "teacher, a scholar, and a citizen of the department, college, and university."  Her research added "an important dimension to the department," and it was hoped that "more could be done to integrate her scholarship into departmental offerings."  The committee was also "very pleased with her record of service to [that point]." (*Amended Complaint*, ¶ 66).

Ms. Goswami's second annual merit review – for 2004 – was positive, too. She was ranked as "very good" overall, with "very good" in teaching and service and "good" in research.  (*Amended Complaint*, ¶ 67).  But, the philosophy department chair, Peg Birmingham, noted that Ms. Goswami was "needlessly confrontational."  (*Amended Complaint*, ¶ 68).  David Kendall – assigned by Ms. Birmingham – conducted a peer review of one of her classes and felt it was more of a women's studies class rather than a philosophy class.   That was not a misogynistic assessment, as he suggested Ms. Goswami teach philosophers, including female thinkers like de Beauvoir, Irigary, and Kristeva.  (*Amended Complaint*, ¶ 68).  Ms. Goswami bristled at this notion because those women were white.  (*Amended Complaint*, ¶ 68).

Ms. Goswami complained to the Dean and the University ombudsman regarding Ms. Birmingham.   Ms. Birmingham apologized in an email and said it would be placed in Ms. Goswami's file. It never was. (*Amended Complaint*, ¶ 69). A week after the email, Ms. Birmingham conducted the first informal review of Ms Goswami in June 2005.  She again noted Ms. Goswami's lack of collegiality as a drawback to her performance.  (*Amended Complaint*, ¶ 70).

Ms. Goswami's second peer review was conducted by Peter Steeves, who was assigned by Ms. Birmingham. Ms. Goswami had requested that someone with an understanding of critical race studies, which Mr. Steeves did not have. Mr. Steeves objected to the inclusion of non-philosophy texts like Toni Morrison's novel *The Beloved* in Ms. Goswami's course materials. (*Amended Complaint*, ¶ 71).

Ms. Goswami's third annual merit review in 2005 showed improvement from the marks she previously received. The Chair of the Philosophy Department that year gave her an overall rating that was, again, "very good," but improved her teaching rating to "outstanding" and her research rating to "very good." (*Amended Complaint*, ¶ 73). Her teaching "seem[ed] inspired." (*Amended Complaint*, ¶ 73). Ms. Goswami's fourth annual review was even better, aside from the research category. She earned an "outstanding minus," with ratings of "outstanding" in teaching and service and "very good minus" in research. (*Amended Complaint*, ¶ 74). In 2006-07 she was awarded competitive research leave, and worked on a book and published two essays. (*Amended Complaint*, ¶ 75). In May of 2007, she won the University's Excellence in Teaching Award and was selected to give the keynote address at DePaul's Honors Convocation. (*Amended Complaint*, ¶ 76). There was more good news for Ms. Goswami in 2007. At her fifth annual merit review, she received an "outstanding" rating in all three categories. (*Amended Complaint*, ¶ 77).

Ms. Goswami had her formal biennial review in May 2008. The department chair at that time, Mr. Lee, organized a personnel committee of her colleagues, and Ms. Goswami submitted her CV, sample syllabi, teaching evaluations, samples of recently published work, and a personal statement. The committee recommended that her contract be renewed for the 2009-11 academic year. Dean Charles Suchar accepted the recommendation, telling Ms. Goswami, "Your colleagues

are quite pleased with your work. Happily, my own review of your record leads to the same conclusion." (*Amended Complaint*, ¶ 81).

Things did not go as well the rest of 2008. Ms. Birmingham was the Chair of the Department, and she downgraded Ms. Goswami during her sixth annual merit review. She gave Ms. Goswami a "very good plus" in teaching, "very good" in research, and "good" in service for an overall rating of "very good minus." This was her worst rating ever. (*Amended Complaint*, ¶ 83). Ms. Goswami alleges it was due to Ms. Birmingham ignoring many of her accomplishments. (*Amended Complaint*, ¶ 84-86). Ms. Goswami complained to the Dean, who raised her overall rating to "very good." (*Amended Complaint*, ¶ 89).

In April 2009, Ms. Birmingham – as the Department's interim Chair – put together a personnel committee comprising Ms. Goswami's departmental peers to conduct a probationary review of her performance in the areas of teaching, scholarship, and service. (*Amended Complaint*, ¶ 90). As Ms. Goswami's last formal biennial review had been the previous year, this was outside the procedures set forth in the Handbook. (*Amended Complaint*, ¶ 90). Ms. Goswami claims that Ms. Birmingham saw to it that this committee had only a truncated version of her record to consider. (*Amended Complaint*, ¶¶ 91-92). While Ms. Goswami had specifically been hired to focus on minority philosophers the University's traditional canon had overlooked, the committee criticized Ms. Goswami for failing to share the Department's focus on traditional European philosophy and for her background in post-colonialism and women's studies. (*Amended Complaint*, ¶ 91).

The Committee recommended against allowing Ms. Goswami to apply for tenure in 2009-10. (*Amended Complaint*, ¶ 96). Moreover, despite the previous formal committee recommendation that Ms. Goswami's contract be renewed for the 2009-10 academic year, Ms. Birmingham's committee

recommended her contract be terminated as of June 2009. (*Amended Complaint*, ¶ 103). Ms. Goswami alleges that these recommendations were based on a number of falsehoods concerning, *inter alia*, her progress on her book, her attendance at meetings and events, and her participation in theses reviews. (*Amended Complaint*, ¶ 98-100).

Dean Suchar rejected the recommendations. But he asked the entire Department to review and vote on the recommendations, which was outside of the procedures set forth in the Handbook. (*Amended Complaint*, ¶ 107). The Department voted 9 to 6 to terminate Ms. Goswami's contract at the end of June 2010. Ms. Goswami would be allowed to apply for tenure before that, however. Seven members of the Department submitted a "minority report" praising Ms. Goswami's performance and rejecting the characterizations of Ms. Birmingham's committee and the Department. (*Amended Complaint*, ¶ 114). Mr. Lee, then the Department chair, also wrote a letter in support. (*Amended Complaint*, ¶ 115).

During the 2009-2010 academic year, Ms. Goswami applied for tenure. There was drama throughout the process, with her detractors complaining about Mr. Lee's support of her application. (*Amended Complaint*, ¶ 118). Mr. Lee even attempted to resign due to the controversy. (*Amended Complaint*, ¶ 118). The Dean had to officially remind the Department that it was their duty to comply with established tenure procedures. (*Amended Complaint*, ¶ 117). Elizabeth Rottenberg raised concerns about Mr. Lee's involvement with the tenure review. (*Amended Complaint*, ¶ 119). And it continued like that, with what Ms. Goswami alleges were unwarranted and unfounded criticisms. (*Amended Complaint*, ¶ 120-126). For example, faculty members criticized Ms. Goswami for not being fluent in German, which had not been a requirement for her position and overlooked that fact that she spoke six other languages. (*Amended Complaint*, ¶ 123).

As the tenure process proceeded, Ms. Goswami's tenure dossier was reviewed by: (1) the Department of Philosophy; (2) the College Personnel Committee ("CPC"); (3) the University Board on Promotion and Tenure ("UBPT"); and (4) DePaul's President, Father Dennis Holtschneider. (*Amended Complaint*, ¶¶ 127, 132, 138, 143, 145). The Department voted 11-7, with one abstention, to recommend that Ms. Goswami not receive tenure. (*Amended Complaint*, ¶ 127). The vote ran along racial lines: every member who voted against Ms. Goswami is white, while every member who voted for her or abstained is a minority. (*Amended Complaint*, ¶ 128). The report, prepared by Dr. Lee, drew not so much on the Department's January 2010 meeting, but on the May 2009 meeting. (*Amended Complaint*, ¶ 127).

Two tenured Department faculty members who supported Ms. Goswami's candidacy submitted another "minority report" that included what Ms. Goswami feels was a "full and fair assessment of her record," and that "documented in detail the numerous procedural and substantive errors in the Department's evaluation of Dr. Goswami." (*Amended Complaint*, ¶129).

Next, the CPC, with Dean Suchar's concurrence, unanimously recommended Ms. Goswami for tenure and, allegedly, "sharply criticized the `unfair,' `offensive, baseless and illogical' departmental report." (*Amended Complaint*, ¶ 132). The report was glowingly in favor of Ms. Goswami. (*Amended Complaint*, ¶¶ 133-38). The recommendations of both the CPC and the Dean were forwarded to the UBPT, presided over by Provost Epps. (*Amended Complaint*, ¶ 139). Around that same time, based on Ms. Goswami's tenure dossier, Mr. Lee gave Ms. Goswami a rating of "outstanding minus" in her seventh annual merit review. (*Amended Complaint*, ¶ 141).

Mr. Epps did not allow graduate students – who, in the main, supported Ms. Goswami – to address the Board, in contravention of the Faculty Handbook. (*Amended Complaint*, ¶ 140). Ms.

Goswami spoke to the Board in support of her case, and the Board asked her a number of questions regarding the motivations of the Philosophy Department's majority report. (*Amended Complaint*, ¶ 142). The UBPT voted 6-1 to recommend against Plaintiff's application for tenure. (*Amended Complaint*, ¶¶ 142-143). In violation of University tenure procedures, Ms. Goswami was not provided a copy of the UBPT's report. (*Amended Complaint*, ¶ 144). University President Holtschneider denied her application in reliance on the negative recommendations of the UBPT and the majority of her Department, finding "that [her] record of scholarship did not sufficiently meet the criteria for promotion and tenure." (Amended Complaint at ¶¶ 145, 148).

Ms. Goswami sought a formal review by the Faculty Council, which submitted its finding to the provost, Mr. Epps. (*Amended Complaint*, ¶ 146). The council voted 2-1 that Ms. Goswami's application had not been considered in accordance with applicable procedures, and that her academic freedom had been violated. (*Amended Complaint*, ¶ 146). Under the Faculty Handbook, this finding meant that the Dean could either recommend that she be offered a new contract or that the case be reviewed as though Ms. Goswami had been a tenured professor dismissed for cause. (*Amended Complaint*, ¶ 147). University President Holtschneider ignored the finding and the procedures, and denied Ms. Goswami's appeal. (*Amended Complaint*, ¶ 148-51). The American Association of University Professors informed President Holtschneider that his action violated both the Faculty Handbook and the Association's regulations. (*Amended Complaint*, ¶ 153).

In Count II, Ms. Goswami alleges that she had a reasonable expectation that her contract would be renewed beyond June 30, 2011, and that Ms. Birmingham knew this. (*Amended Complaint*, ¶¶ 171-72). Ms Birmingham took various actions that Ms. Goswami claims "intentionally and maliciously interfere[d] with [her] expected contractual relationship with

DePaul." (*Amended Complaint*, ¶ 173). Ms. Birmingham took these actions in order to interfere with Ms. Goswami's expectation of receiving tenure and a new contract. (*Amended Complaint*, ¶ 174). DePaul terminated its relationship with Dr. Goswami and refused to renew her contract as a result of these actions. (*Amended Complaint*, ¶ 175).

In Count VII, Ms. Goswami lodges similar allegations against Ms. Rottenberg with regard, again, to her reasonable expectation that her contract would be renewed, and her loss of that contract renewal and tenure as a result. (*Amended Complaint*, ¶¶ 205-09). She adds that Ms. Rottenberg provided various individuals with "false and/or incomplete information concerning Dr. Goswami so as to encourage and convince them" first to vote to recommend termination of Dr. Goswami's contract in 2009 – an action that the Dean refused to take – and then to oppose Ms. Goswami's application for tenure. (*Amended Complaint*, ¶ 207).

## II.

## ANALYSIS

The defendants have a few issues with Ms. Goswami's complaint that they feel require dismissal of the claims against Ms. Birmingham and Ms. Rottenberg. For the most part, the defendants' arguments are unconvincing. For example, they argue that because Ms. Goswami had a contract with DePaul that governed her pursuit of tenure, she cannot maintain a claim for tortious interference with prospective economic advantage. The argument is an odd one, especially given the cases the defendants rely upon. *In Delphi Industries, Inc. v. Stroh Brewery Co.*, 945 F.2d 215 (7th Cir. 1991), the plaintiff had an oral agreement for the purchase of a warehouse, and thus, could not argue that no agreement existed and that there had been tortious interference with his expectancy of one. *Id.* at 221.

In *Alvarez v. Hi-Temp Inc.*, 2004 WL 603489 (N.D.Ill. 2004), the plaintiff's complaint concerned the terms of his union's collective bargaining agreement with his employer and so, was preempted. He sought to avoid this by characterizing his claim as one for tortious interference with an employment relationship. The court refused this attempt at artful pleading – which, of course, can never alter reality, or create or eliminate rights, *cf. Simpson Oil Co v. United States,* 377 U.S. 13, 24 (1964); *Hays v. Bryan Cave, LLP*, 446 F.3d 712, 713 (7th Cir. 2006); *Parmelee Transportation Co. v. Keeshin*, 292 F.2d 794, 804 (7th Cir. 1961) – finding that his claim was precluded by the existence of the collective bargaining agreement. In other words, he couldn't claim it was "prospective." 2004 WL 603489, 2.

Here, Ms. Goswami is complaining about prospective economic advantages – a renewed contract and tenure. Neither are existing agreements, but future ones, that may never come into being. She did have a contract with DePaul, and she does allege it was breached, but that is another matter, another claim.

Defendants also say that Ms. Birmingham and Ms. Rottenberg are protected by a qualified privilege. But that privilege does not extend to conduct that is alleged to have been malicious. *Adelman-Reyes*, 500 F.3d at 668. Here, Ms. Goswami alleges just that. (*First Amended Complaint*, ¶¶ 70-7182, 84-87, 90-92, 119, 177, 207, 211). Moreover, unlike the defendant in *Adelman-Reyes*, Ms. Birmingham, at least, is alleged to have acted outside of the University's tenure review procedures. (*First Amended Complaint*, ¶¶ 90-91); *cf. Adelman-Reyes*, 500 F.3d at 668 (defendant was required by University's established tenure process to submit subjective opinion about plaintiff's suitability for tenure).

But defendants do make one argument that is persuasive. The real issue here is whether Ms.

Goswami had a reasonable expectancy of her contract being renewed and being granted tenure. The two go hand-in-hand, as there was no provision for continued employment without tenure after the probationary period. A reasonable expectancy of entering into a valid business relationship is a critical element of a claim for tortious interference with prospective economic advantage. *Adelman-Reyes v. Saint Xavier University*, 500 F.3d 662, 667 (7th Cir. 2007); *Anderson v. Vanden Dorpel,* 172 Ill.2d 399, 406–07 (1996); *Atanus v. American Airlines, Inc.*, 403 Ill.App.3d 549, 554, 932 N.E.2d 1044, 1048 (1st Dist. 2010). The other requisite elements are the defendant's knowledge of the expectancy; an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and damage to the plaintiff resulting from the defendant's interference. *Pomerantz v. Taylor-Nations*, 2013 WL 5498052, 7 (1st Dist. 2013).

Defendants contend that, under the circumstances Ms. Goswami alleges, there can be no reasonable expectation of tenure – or of the new contract that comes with it. They rely on the Tenth Circuit's comprehensive opinion in *Babbar v. Ebadi*, 216 F.3d 1086 (10th Cir. 2000)(Unpublished Disposition), which applied Kansas law, and which appears indistinguishable from Illinois law – and, indeed, from this case. There, a tenure-track professor on probationary status – like Ms. Goswami – was denied tenure despite "consistently excellent reviews of his job performance . . . reviews often superior to those of his colleagues who were granted tenure – and no reports of deficient performance." 2000 WL 702428, 1. But those glowing reviews did not create a reasonable expectancy of tenure. Nor did the process of applying for tenure detailed in the faculty handbook, a process that indicated that tenure was not guaranteed and was, as the Court of Appeals noted, "highly discretionary." 2000 WL 702428, 8.

That's all Ms. Goswami points to – consistently positive reviews and the handbook's outline of the tenure process.[1]  Moreover, the process detailed in the DePaul handbook, the annual merit reviews Ms. Goswami cites to repeatedly, plays no role  in the consideration of candidates for tenure.  They serve only to provide an opportunity for feedback, to communicate expectations, and develop goals and to determine salary recommendations. (*Defendants'* Ex. A, §§3.2.1; 3.2.2).  That is not to ignore the fact that Ms. Goswami had other positive reviews including formal reviews – but so did the plaintiff in *Babbar.*  Ms. Goswami alleges no more reasonable an expectation of tenure than did the plaintiff in *Babbar.*

As noted, *Babbar* was a Tenth Circuit decision applying Kansas law.  Applying Illinois law is *Jacobs v. Mundelein College, Inc*., 256 Ill.App.3d 476, 628 N.E.2d 201 (1st Dist. 1993).  There, as here, the plaintiff claimed the terms of the handbook gave "non-tenured professors an expectation of renewal and tenure if they adhere to handbook guidelines."  256 Ill.App.3d at 482, 628 N.E.2d at 206.  But there, as here, the handbook "simply detail[ed] the qualifications of various levels of instructors and professors and describe[d] some criteria upon which promotion and tenure decisions are based. They convey no promise, express or implied, of renewal of an assistant professor's contract." 256 Ill.App.3d at 482, 628 N.E.2d at 206. *Compare  Smith v. American Arbitration Ass'n, Inc.,*  233 F.3d 502, 505 (7th Cir.2000)("The language is not promissory, and this distinguishes the

---

[1] Ms. Goswami argues that it is clear she had a reasonable expectation of receiving tenure because the handbook was "geared towards shepharding [sic] a non-tenured track professor toward tenure . . . ." (*Plaintiff's Memorandum in Opposition*, at 7).  This is a confusing assertion.  Non-tenure track professors are not in the mix for tenure (*Defendants'* Ex. A, §3.2.2), so there would be no hope of them being shepherded there.  Perhaps Ms. Goswami meant the handbook shepherded *tenure-track* professors toward tenure, but she did not allege that in her complaint, and there is no indication that it does.  The handbook lists the criteria and describes the review process – just as it did in *Babbar*.  That may be a promise that the process and criteria will be followed, but that's another type of claim altogether.  It is not a guarantee that the applicant for tenure will be successful.  If it were, there would be no need for criteria or a process.

employee-handbook cases on which Smith relies."). The handbook's recital of procedures and criteria does not create a reasonable expectation of receiving tenure.

Ms. Goswami's responsive brief ignores *Babbar*. That is an improvident approach. Failure to respond to potentially dispositive authority, at a minimum, implies concession, and generally is deemed to result in waiver. *See, e.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *United States v. Vrdolyak,* 593 F.3d 676, 691 (7th Cir. 2010); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *United States v. Farris,* 532 F.3d 615, 619 (7th Cir. 2008); *Bonds v. Coca-Cola Co.,* 806 F.2d 1324, 1328 (7th Cir. 1986). *See also Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987)("[t]he ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is... pointless.").

Moreover, she is unable to cite any case in which there was found to be a reasonable expectation of tenure for a professor under any circumstances.[2] Instead, she relies on *Malatesta v. Leichter*, 186 Ill.App.3d 602, 542 N.E.2d 768 (1st Dist. 1989), in which the plaintiff was the prospective purchaser of an automobile dealership, with a reasonable expectation of completing the deal, because all that remained was approval from the manufacturer, and there was evidence he was the "leading candidate" for the franchise. 186 Ill.App.3d at 617, 542 N.E.2d at 779. The situation here is quite different because there is nothing to suggest that Ms. Goswami was the leading candidate among several for an award of tenure that would have been made to someone. By contrast, the car dealership was going to be sold, the only question was to whom. Unlike the sale of a car dealership, the University didn't have to give tenure to anyone, let alone Ms. Goswami.

---

[2] The defendants' cases that Ms. Goswami does address are criticized for not being tenure cases. (*Plaintiff's Memorandum in Opposition*, at 10-11). But plaintiff has been unable to point to a tenure case of her own, and the burden is hers as the movant.

Ms. Goswami also refers to *James v. Intercontinental Hotels Group Resources, Inc.*, 2010 WL 529444, 5 (N.D.Ill. 2010), where the court found the plaintiff adequately stated a claim for tortious interference with prospective economic advantage. But, like *Malatesta*, *James* is not a tenure case. It concerns an at-will employee, who alleged she had an excellent work record and, with it, a reasonable expectation of continuing with her employer. The court noted that "an at will employment relationship 'is subsisting and will presumptively continue in effect so long as the parties are satisfied.'" 2010 WL 529444, 4. That was not the case for Ms. Goswami.

She was a probationary employee for a defined period. Unlike the at-will employee in *James*, there was a definite end date to Ms. Goswami's employment – unless, of course, she succeeded in obtaining an award of tenure. As in *Babbar*, Ms. Goswami's employment "was for a finite period, and the tenure decision... [was] highly discretionary." 2000 WL 702428, *8. At best, Ms. Goswami had "the mere hope" of tenure. *Werblood v. Columbia College of Chicago,* 180 Ill.App.3d 967, 976, 536 N.E.2d 750, 756 (1st Dist. 1989). And that is not enough. *Id.*

## CONCLUSION

Based on the First Amended Complaint and the materials the parties submitted, Ms. Goswami has failed to adequately and plausibly allege that she had a reasonable expectation of tenure. The defendants' motion to dismiss Counts II and VI of the plaintiff's First Amended Complaint [Dkt. # 66] is GRANTED.

ENTERED: _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 1/14/14